ANDERSON PRICE, Respondent, *v.* MARY YOST WOOD, Appellant.

*A mortgage collateral to an agreement is controlled by the terms thereof.*

In an action brought to foreclose a mortgage it was shown that the defendant being embarrassed for money, employed the plaintiff, an attorney and counselor at law, as her attorney, under an agreement which was entered into between them under date of October 22, 1892, by which, after reciting the execution by the defendant of her bond and mortgage, and the conveyance of some property as further collateral security, it was declared that the agreement was to declare the purpose for which the mortgage was executed, namely, that a certain corporation had become liable for the payment of certain debts mentioned in the schedule attached to the agreement for some of which the defendant had become liable, and that it was the intention of the defendant to secure the services of the plaintiff in the payment, reduction, settlement and adjustment of the debts. It further provided that the proper charges for the services of the plaintiff, in addition to all payments to be made by him in settlement of debts, etc., should be allowed as a part of the sum of $11,000 for which the mortgage was given; that all payments, expenses and services should draw interest from the time when the same were made, rendered and incurred.

The agreement then, among other things, provided for the keeping of an account by the plaintiff of all payments, services and expenses incurred or rendered, which account was to be rendered to the defendant upon demand.

Simultaneously with the execution of the agreement the defendant executed the bond and mortgage, which the action was brought to foreclose, to secure the payment of the sum of $11,000 on October 22, 1892, with interest payable semi-annually, the mortgage containing a provision that if interest remained unpaid for thirty days, the whole principal sum should become due and payable.

No consideration was given for the mortgage, and it was given simply to secure advances and services to be made or rendered under the agreement. Before the execution of the mortgage the defendant objected to the interest clause on the ground that it did not comply with the agreement, and the plaintiff assured the defendant that the interest would accrue and be computed according to the agreement and that the interest clause of the mortgage was merely formal, and relying upon these representations the defendant executed the bond and mortgage.

Certain services were thereafter rendered and disbursements were made by the plaintiff, from whom the defendant from time to time demanded an itemized account of advances and services, which he failed to give her until May 2, 1893. The defendant did not tender any interest on the 22d day of April, 1893, and on the 23d day of May, 1893, this action to foreclose the mortgage was commenced. The plaintiff claimed the sum of $8,750 as due thereon, with interest from October 22, 1892. The referee in the action found in favor of the plaintiff for the sum of $7,575.30, as money advanced, with interest, and $1,500, as the value of his services, and judgment of foreclosure and sale was directed accordingly.

*Held,* that the defendant could not be in default for non-payment of interest when the amount due had not been liquidated;

That it was not the intention of the parties that any liability should arise from the interest clause until the amount payable under the agreement had been liquidated;

That the rights of the parties rested upon the agreement, and the bond and mortgage were intended as security for what should be due under the agreement;

That it was not the intention of the parties that the interest clause should ever become operative; that there being no means of determining what amount of interest should at any time be due and payable, the parties intended to be governed by the agreement, and that the bond and mortgage should only be enforced after it had become due, and in case other means were not provided.

APPEAL by the defendant, Mary Yost Wood, from a final judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 31st day of October, 1893, upon the report of a referee.

The agreement referred to in the opinion in this action contained, in addition to the provisions set out in the opinion, a provision to the effect that all "payments, expenses and services shall draw interest from the date when the same shall have been rendered, made and incurred."

*E. E. Baldwin,* for the appellant.

*Anderson Price,* respondent, in person.

VAN BRUNT, P. J.:

In October, 1892, the defendant, being embarrassed for money to meet certain obligations, employed the plaintiff, who was an attorney and counselor, as her attorney and agent, and an agreement was entered into between them bearing date October 22, 1892, which, after reciting the execution by the defendant of her bond and mortgage in the sum of $11,000, and the conveyances as further collateral security of certain lots in One Hundred and Twenty-ninth street, provided that the agreement was to declare the intention and purpose for which said mortgage was executed, to wit: That the Cranston West Point Hotel Company had become liable for the payment of certain debts and incumbrances mentioned in a schedule attached to said agreement, and for some of which defendant had become liable, etc., and that it was the desire and intention of the defendant to secure the services of the plaintiff in the pay-

ment, reduction, settlement and adjustment of said debts, in which the plaintiff was to use his best judgment, and the defendant to and by further indorsements, etc. By the said agreement the defendant then agreed that the proper charges for the services of the plaintiff, in addition to all payments made by him in settlement, etc., of debts, should be allowed as part of the sum of $11,000, for which the said mortgage was given, and also all other expenses.

The agreement then provides that the plaintiff shall keep an account of all said services, payments and expenses, and which said account shall be rendered to the defendant on demand, and all payments and services and expenses shall draw interest from the date rendered, made and incurred, and shall constitute and be a part of the sum of $11,000, for the securing of which the said mortgage was given. The agreement then provides that plaintiff may refuse to make any further advances in case the condition of affairs of the company renders it imprudent, notice of which was to be given to defendant in writing, and that in case the defendant desires to secure other sums than the amount represented in said mortgage, other and additional security should be furnished by defendant. Annexed to said agreement was a schedule of liabilities. The defendant, pursuant to the provisions of said agreement, and simultaneously with its execution, executed to the plaintiff the bond and mortgage mentioned in the complaint, to secure $11,000 with semi-annual interest, bearing date October 22, 1892, and payable October 22, 1893, with an interest clause providing that in case semi-annual interest remains unpaid for thirty days, the whole principal sum should become due and payable. This bond and mortgage was executed to secure future advances and services, no part of the consideration being advanced by the plaintiff at or before the execution thereof. Before the execution of the bond and mortgage the defendant objected to the interest clause therein, because it did not comply with the agreement, and thereupon the plaintiff assured the defendant that interest would accrue and would be computed according to the agreement, and that the interest clause was merely formal, and that the terms of the agreement should control, and relying upon such representations the defendant executed said bond and mortgage. The plaintiff subsequently made advances and performed services under the agreement, and also in respect to matters outside of the

agreement. Upon four separate occasions between February 1 and April 20, 1893, the defendant demanded of plaintiff an itemized account of his advances made and services rendered; and in the latter part of March, 1893, the defendant requested the plaintiff to furnish her with an itemized account of his services, disbursements and interest; and again on May third, up to which time the plaintiff was acting as agent and attorney of the defendant, and the referee has failed to find that any such account was rendered, and the evidence shows that it was not. The plaintiff furnished statements of amounts paid, not simply payments made under the agreement, but including others, and no account whatever as to services rendered until May 2, 1893, when he rendered a bill for nearly $10,000. The defendant not having tendered any interest on the 22d day of April, 1893, on May twenty-third this action of foreclosure was commenced, the plaintiff claiming the sum of $8,750, with interest from October 22, 1892, the date of the mortgage to be due thereon.

The defendant answered, and a reference being had the referee reported in favor of the plaintiff for $7,575.30 advances, with interest to be added, and $1,500 as value of services, and gave judgment of foreclosure and sale, and from such judgment this appeal is taken.

It is to be borne in mind in the determination of the rights of the parties to this litigation, that the relation of attorney and client existed between the plaintiff and defendant at the time of the execution of these papers, and that, therefore, the transactions of the plaintiff with the defendant are to be scrutinized. It appears that the bond and mortgage in suit and the agreement were executed at one and the same time, and they must, therefore, be read together, and unless the plaintiff has performed all his obligations under the agreement, he cannot enforce the obligation of the bond and mortgage. It further appears that the defendant, before executing the bond and mortgage, objected to this interest clause and only executed it relying upon the representations of the plaintiff, her counsel, that the clause was merely formal and that the terms of the agreement must control. Under these circumstances how is it possible for the plaintiff to establish a forfeiture for the failure to comply with this merely formal provision? There was nothing in the agreement about any

forfeiture. There was nothing in the agreement by which the amount secured by the bond and mortgage could be augmented by interest, and it clearly shows that the $11,000 was a lump sum in which was to be included the interest upon advances, services, etc. There is nothing in the agreement to which the interest clause in the bond and mortgage could possibly attach until the amounts secured were liquidated. Furthermore, the plaintiff in the agreement, upon demand, agreed to render to the defendant an account of services, payments and expenses, and it appears that although frequently demanded, no such account was ever pretended to be rendered until May 2, 1893 ; and even then the account contained items not chargeable to the bond and mortgage, and a charge of nearly $10,000 for services, which services, as chargeable against this mortgage, the referee found to be worth $1,500 ; and this was also after the plaintiff claims that the defendant was in default for non-payment of interest. It is difficult to see how the defendant could be in default for non-payment of interest when the amount due had not been liquidated, and when a charge for services is made against her many times greater than their value.

The fact is that at the time of the execution of this bond and mortgage neither party supposed that any liability would or could arise from that interest clause until the amounts under the agreement had been liquidated, the rights of the parties rested upon the agreement, and that the bond and mortgage were held as security for what should be due under the agreement. There is no provision for any payment whatever by the agreement, and it probably was never expected that it would be necessary for the plaintiff to resort to the bond and mortgage for payment of the amounts due under the agreement. They were taken simply to insure the plaintiff from final loss in case other sources of payment should fail. It is undoubtedly true that the plaintiff advanced moneys far beyond what he was called upon to do by the agreement, but those friendly acts on his part cannot enlarge the plain intent and meaning of the agreement and bond and mortgage now under consideration.

We are of opinion that it was not the intent of the parties that the interest clause in the bond and mortgage should ever become operative ; that, there being no means of determining what amount of interest should be at any time due and payable, the parties intended

to be governed by the agreement, and that the bond and mortgage should only be enforced after its due date. and in case other means of payment were not provided.

The judgment appealed from must, therefore, be reversed and a new trial had before a referee to be appointed in the order to be entered hereon, with costs to the appellants to abide the event.

O'BRIEN and FOLLETT, JJ., concurred

Judgment reversed and a new trial had before a referee to be appointed in the order to be entered hereon, with costs to the appellants to abide the event.